USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/27/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

FONDATION DIXHUIT,

                           Plaintiff,

           -against-

PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY,

                           Defendant.

------------------------------------------------------------------------ X

14-CV-2165 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

      Plaintiff Fondation Dixhuit ("Dixhuit") filed suit on March 27, 2014, seeking payment of a $20,000,000 life insurance policy (the "Policy") that had been issued by Defendant Pruco Life Insurance Company of New Jersey ("Pruco") to the late billionaire Yaron Bruckner. Dixhuit, a private foundation formed under the laws of the Principality of Liechtenstein to benefit Mr. Bruckner's family, is the beneficiary of the Policy and alleges Pruco breached the insurance contract when it refused to pay the Policy proceeds. Compl. ¶¶ 1, 16-17. About a week earlier, Pruco had filed a declaratory judgment action in Liechtenstein to invalidate the Policy on the basis of allegedly fraudulent representations made by Mr. Bruckner in procuring the Policy. Def. Mem. Law at 1. Pruco moves pursuant to Fed. R. Civ. P. 12(b)(1) for this Court to abstain in favor of the Liechtenstein proceeding, or, alternatively, to dismiss the Complaint on the basis of *forum non conveniens*. Def. Mem. Law at 1-2. If the Court denies Pruco's motion to dismiss, Pruco asks the Court to stay this matter pending the outcome of the Liechtenstein proceeding. Def. Mem. Law at 19. For the following reasons, Pruco's motions are DENIED.

I.      BACKGROUND

Yaron Bruckner was a resident of Monaco and citizen of Belgium and Israel; he acquired the life insurance policy at the center of this dispute from Pruco on March 28, 2008.  Compl. ¶ 5.[1]  Mr. Bruckner died from a brain tumor on August 4, 2013, and Dixhuit filed a claim for the Policy benefits on October 16, 2013.  Def. Mem. Law at 4.  Upon investigating the claim, Pruco uncovered facts that led it to believe Mr. Bruckner had misrepresented his medical history in his Application for Life Insurance (the "Application").[2]  *Id* at 4.  Specifically, Pruco learned that Mr. Bruckner had undergone surgery to remove a brain tumor in 2006 and had received chemo- and radiation therapy.  *Id*.  In contrast, on the Application, Mr. Bruckner denied that he had ever been treated for or diagnosed with cancer, tumors, or any disorder of the brain or nervous system.  *Id.* at 2-3.

On March 21, 2014, Pruco initiated a proceeding in Lichtenstein, Dixhuit's home country, seeking a declaratory judgment that the Policy was invalid due to fraud.  Def. Mem. Law at 4; Pl. Mem. Law Opp. at 7.  Days later, on March 27, 2014, Dixhuit filed its complaint in

---

[1]     On a Rule 12(b)(1) motion, the Court accepts as true all uncontroverted facts in the complaint and draws all inferences in favor of the party asserting jurisdiction.  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  The Court may consider affidavits and documentary evidence submitted in support of or in opposition to the motion regarding the existence of jurisdiction, so long as the evidence is "competent."  *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

[2]     The Application was purportedly integrated into the Policy through a clause that read, "This policy and any attached copy of an application, including an application requesting a change, form the entire contract."  Pendleton Exh. 1, "Policy," at 5.  Dixhuit disputes whether Mr. Bruckner's statements in the Application would be admissible as substantive evidence because Dixhuit claims – without pointing to any support in the record – that the Application was not properly annexed to the Policy when the Policy was delivered. Pl. Mem. Law Opp. at 6, n.9.  Dixhuit did not file any version of the Policy either with the complaint or in its opposition to Defendant's Motion to Dismiss. *See* Pl. Mem. Law Opp. at 3, n.2.  When making its argument to this Court about the contents of the Policy, Dixhuit relied on the Application and the Policy that Pruco had submitted to the Court.  Pl. Mem. Law Opp. at 5-6, 8 (citing Pendleton Decl. Exh. 1).  The Court will, therefore, treat the Application and Policy as submitted by Pruco as an integrated contract when considering Pruco's Motion to Dismiss.

2

this Court for breach of the insurance contract, claiming Pruco must pay the insurance proceeds because the Policy's incontestability period had lapsed.[3]

Mr. Bruckner acquired the Policy as part of a portfolio of life insurance valued at approximately $100 million; the portfolio was brokered by a New York agent and the policies were solicited and negotiated in New York.  Pl. Mem. Law Opp. at 5.  Pruco issued one of the policies, valued at $20 million, and delivered the Policy in New York.  Compl. ¶¶ 7-8.  The bottom of each page of the Application was marked with a stamp that says "New York." Pendleton Decl. Exh. 1, "Application."  Mr. Bruckner indicated in the Application that his home and billing addresses were in Monaco; in the space for "current employer" Bruckner wrote "New York."  *Id.* at 1, 3.  Mr. Bruckner signed the Application in New York on March 25, 2008.  *Id.* at 8.  Pruco issued the Policy on March 28, 2008.  Pendleton Decl. Exh. 1, "Policy," at 1.  Each page of the Policy is stamped with the code "ULNT-2005-NY," indicating it was issued on a New York form.  *See id.*

Consistent with New York law, the Policy contains an incontestability clause that reads:

Except as we state in the next sentence, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date. The exceptions are: (1) non-payment of enough premium to pay the required changes; and (2) any change in the contract that requires our approval and that would increase our liability.

Pendleton Exh. 1, "Policy," at 5; *cf.* N.Y. Ins. Law § 3203(a)(3) (McKinney's 2013).  The Policy also included an integration clause:

This policy and any attached copy of an application, including an application requesting change, form the entire contract.  We assume that all statements in an

---

[3]    Dixhuit filed the Complaint on the basis of diversity jurisdiction.  Compl. ¶ 3.  The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Pruco's state of incorporation and principal place of business is New Jersey, Fondation Dixhuit is a foreign entity organized under the laws of Lichtenstein, and the amount of controversy – $20,000,000 – well exceeds the jurisdictional minimum.  Plaintiff filed in the Southern District of New York because "this was the district where the contract of insurance that gives rise to the complaint was applied for, issued and delivered."  Compl. ¶ 4.  Venue is therefore proper.  28 U.S.C. § 1391(b)(3).

> application are made to the best of the knowledge and belief of the person(s) who make them; they are deemed to be representations and not warranties. We rely on those statements when we issue the contract and when we change it. We will not use any statement, unless made in an application, to try to void the contract, to contest a change, or to deny a claim.

Pendleton Exh. 1, "Policy," at 5; *cf.* N.Y. Ins. Law § 3203(a)(4) (requiring life insurance policies delivered in New York to include a provision stating that "the policy, together with the application therefor if a copy of such application is attached to the policy when issued, shall constitute the entire contract between the parties"). The crux of the dispute in this action and the action before the Liechtenstein court is whether Pruco may deny Dixhuit's claim to the Policy proceeds if Bruckner intentionally made material misrepresentations in the Application, given the lapse of the incontestability period.

Just as Pruco asks this Court to stay its hand in favor of the Liechtenstein action, Dixhuit asked the Liechtenstein court to stay its hand in favor of this action. The Liechtenstein court acted first and, in a decision issued on July 15, 2014, while this motion was being briefed, suspended Pruco's declaratory judgment action "until such a time as a legally-binding conclusion of the proceedings pending before the U[.]S[.] District Court [of the] Southern District of New York is reached." Pendleton Reply Decl. Exh. B at 1. The Liechtenstein court reasoned that a resolution of the breach of contract claim before this Court would be enforceable in New York against either party and would resolve the dispute before the Liechtenstein court, whereas a declaratory judgment in Dixhuit's favor by the Liechtenstein court would not be enforceable against Pruco in New York. Pendleton Reply Decl. Exh. B at 5. Notwithstanding the Liechtenstein court's decision, Pruco argues that this Court should stay its hand in favor of that proceeding or dismiss based on comity or *forum non conveniens.* Pruco argues that New York courts have little interest in enforcing the Policy because neither party nor the insured is (or was) a resident of New York and Bruckner's financial ties with New York were trivial compared to

4

his overall wealth.  Def. Reply Mem. Law at 2-3, 5.[4]  It follows, Pruco argues, that Liechtenstein has a greater interest in the outcome of the dispute as the beneficiary's domicile and is a more convenient forum because the witnesses and evidence are located around Europe.  Pruco also argues that the Liechtenstein court is better equipped than this court to apply Monegasque law, which, it argues, governs the dispute.  Def. Mem. Law at 16-17.

For the sake of clarity and because it is relevant to both abstention and the *forum non conveniens* analysis, the Court will first resolve what law governs interpretation of the Policy.

II.     NEW YORK LAW GOVERNS THE POLICY

Both parties concede that the Policy contains neither a choice of law nor a forum selection clause and agree that the Policy was issued in compliance with New York insurance law requirements.  Def. Reply Mem. Law at 1.  Dixhuit argues that the application of New York law was implicit in the contract because it was solicited and executed through New York channels and the Application and Policy were printed on New York forms.  Pl. Mem. Law Opp. at 8.  Alternatively, Dixhuit argues that a traditional choice of law analysis leads to the conclusion that New York law applies.[5]  Pl. Mem. Law Opp. at 11-13.  Pruco counters that the absence of an explicit choice of law clause and the sophistication of the parties precludes a finding that there was a meeting of the minds that New York law would govern all future

---

[4]     Pruco's argument that the Court should dismiss the complaint in favor of the Liechtenstein court because Bruckner allegedly chose to purchase insurance in New York to take advantage of New York's pro-beneficiary insurance law as part of a scheme to defraud multiple American insurers, Def. Reply Mem. Law at 5, goes to the merits of the dispute and is not a proper factor for the Court to weigh on a motion to dismiss.

[5]     Dixhuit also points to provisions in other life insurance policies acquired by Bruckner as part of the same portfolio of life insurance that make specific references to New York law as well as communications between Bruckner's New York broker and Pruco to show Pruco understood that Bruckner was specifically seeking a New York life insurance policy.  Pl. Mem. Law Opp. at 5-6.  Because the Policy has an integration clause that excludes consideration of the other policies and any communications prior to the execution of the contract that would add to or modify the terms of the contract, that evidence is not relevant to the choice of law analysis.

disputes arising under the contract. Pruco also argues that under New York choice of law rules Monegasque law governs the validity of the Policy because the insured resided in Monaco. Def. Reply Mem. Law at 7-8.

"A federal court exercising diversity jurisdiction must apply the choice of law analysis of the forum state." *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Neither party disputes that New York's choice of law rules apply. "The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993). In the absence of an actual conflict, no choice of law analysis is necessary. *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

Assuming, *arguendo*, that there is a conflict between New York law and Monegasque law,[6] New York courts analyze choice of law questions in contract disputes under a "center of gravity" or "grouping of contacts" approach to determine which state has the "most significant relationship to the transaction and the parties." *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 642 N.E.2d 1065, 1068 (N.Y. 1994) (citing *Auten v. Auten*, 124 N.E.2d 99 (N.Y. 1954)). "[S]electing the contacts that obtain significance in the particular contract dispute" is "[c]ritical to a sound analysis." *Stolarz*, 613 N.E.2d at 939. "[T]raditional choice of law factors [in contract cases] should be given 'heavy weight.'" *Id.* The factors to consider in this analysis are: the place of contracting; "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." *Zurich*, 642 N.E.2d at

---

[6] The parties were less than clear whether they believe there actually is a conflict between New York and Monegasque law.

1068 (citing Restatement (Second) of Conflict of Laws § 188). In insurance disputes, this approach often results in the dispute being governed by the law of "the state which the parties understood to be the principal location of the insured risk [or insured] . . . unless with respect to a particular issue, some other state has a more significant relationship . . . to the transaction and the parties." *Id*. at 1069; *but see Zogg v. Penn Mut. Life Ins. Co.*, 276 F.2d 861, 864 (2d Cir. 1960) (applying New York's "flexible" center of gravity analysis rather than a uniform conflict-of-law theory based on the insured's domicile to determine what law applied to the suicide clause of a life insurance policy).[7] No single factor, however, is outcome determinative, and courts do not engage in a "mindless scavenger hunt to see which state can be found to have more contacts," but instead endeavor to "detect and analyze what interest the competing states have in enforcing their respective rules." *Fireman's Fund Ins. Co., Inc. v. Schuster Films, Inc.*, 811 F. Supp. 978, 984 (S.D.N.Y. 1993).

Although the "grouping of contacts is the primary analytical tool, in certain instances the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests, and therefore should be considered." *Zurich*, 642 N.E.2d at 1069 (quotations omitted). When analyzing choice of law for insurance contracts, the New York

---

[7] *Zurich* addressed choice of law for a general liability insurance contract, which implicates policy interests different from life insurance policies. *See* 642 N.E.2d at 1069 (citing Restatement (Second) of Conflict of Laws § 193, Contracts of Fire, Surety of Casualty Insurance, for its list of special factors to address regarding liability insurance contracts). The Restatement (Second) of Conflicts of Laws § 192, Life Insurance Contracts, provides that the "validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law . . . by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties." In contracts for insurance other than liability insurance, New York courts adhere to the traditional "center of gravity" or "grouping of contacts" choice of law analysis. *See Stolarz*, 613 N.E.2d at 938-39 (applying a grouping of contacts analysis considering "traditional choice of law factors" in a dispute over automobile insurance); *Johnson*, 913 N.Y.S.2d at 45-46 (applying a grouping of contacts analysis to determine New Jersey law applied to a life insurance policy). The domicile of the insured in a life insurance context is, however, clearly an important factor in the grouping of contacts analysis. *See, e.g., 2004 Stuart Moldaw Trust v. XE L.I.F.E., LLC*, 642 F. Supp. 2d 226, 237 (S.D.N.Y. 2009) (quoting the Restatement (Second) Conflicts of Law § 192 to support the domicile of the insured as an important contact for choice of law analysis)**.**

Court of Appeals instructs that courts may also consider the governmental interest in the enforcement of a state's regulatory scheme in this highly-regulated area – including regulating the conduct of insurance companies doing business within the state. *See id.* (applying New York law to invalidate a clause in an insurance liability contract that indemnified punitive damages because New York has a strong public policy against indemnification for wrongful acts, and New York had an interest in regulating the insurer's conduct because it was an "adopted" New York resident); *Stolarz*, 613 N.E.2d at 939 (noting that extensive regulation of automobile insurance implicates a governmental interest in the enforcement of its regulatory scheme). As a whole, the purpose of the "grouping of contacts" analysis is to give "the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation," while still "giv[ing] effect to the probable intention of the parties and consideration to whether one rule or the other produces the best practical result." *Auten*, 124 N.E.2d at 102 (internal citations, quotations, and alterations omitted).

New York has the most significant relationship the Policy, and New York law therefore governs this dispute. Mr. Bruckner solicited a portfolio of life insurance policies from six insurance companies in New York, including the one issued by Pruco, through a New York agent; Bruckner executed the Application on New York forms in New York; and Pruco delivered the Policy in New York. While Bruckner's ties to New York were not extensive (he was substantially invested in New York real estate and the Application states New York was the location of his "employer"), it seems clear, at least at this stage of the litigation, that Mr. Bruckner's intent was to procure insurance policies governed by New York law. By contrast, the sole connection Monaco has with the Policy is that Bruckner was a resident of Monaco from the time he executed the Policy presumably until his death. Bruckner was not, however, a citizen of

Monaco. The record reveals that in 2006 and in 2012 Bruckner was treated for cancer in Belgium, where he was a citizen. Moreover, according to his death certificate, Bruckner died in Israel, his second country of citizenship. Balanced against New York's grouping of contacts, the fact that Bruckner resided in Monaco does not outweigh New York's interest in the outcome of the litigation.

New York also has a governmental interest in the application of its law. Pruco acknowledges that New York insurance law governed the sale and delivery of the Policy. Def. Reply Mem. Law at 7. All life insurance policies delivered in New York must first be approved by the Superintendent of Insurance as conforming to the requirements of New York law. N.Y. Ins. Law § 3201(b)(1). New York law requires all life insurance policies to contain an incontestability clause. *See* N.Y. Ins. Law § 3203(a)(3). This reflects long-standing New York public policy to "provide policyholders and beneficiaries with security that their premiums [are] buying the protection that they believe[] they [are] paying for" after the contestability period has passed and to "protect the average consumer from the power discrepancy between the carrier and the customer." *New England Mut. Life Ins. Co. v. Doe*, 710 N.E.2d 1060, 1062 (N.Y. 1999); *see also Northwestern Mut. Life Ins. Co. v. Johnson*, 254 U.S. 96, 101-102 (1920) ("The object of the [incontestability] clause is plain and laudable – to create an absolute assurance of the benefit, as free as may be from any dispute of fact except the fact of death, as soon as it reasonably can be done.") (Holmes, J.). New York, therefore, has a strong interest in the interpretation of the Policy and in the conduct of insurance companies doing business in this state, and that interest cannot be overcome merely because the insured was at all times a resident of a foreign country.

If Pruco is correct on the facts, the Court is not unsympathetic to its desire to have the validity of the Policy determined under law that may be more favorable to insurance companies than New York law is on this issue. After all, as Pruco tells the story, Bruckner was an

9

international billionaire who made a calculated decision "to purchase insurance in New York as part of [a] scheme to defraud multiple American insurers," resulting in a $100 million dollar fraudulent windfall to his already well-endowed estate. Def. Reply Mem. Law at 5-6. Pruco further argues that the "attempted use of the incontestability clause as an absolute defense to fraud [on these facts] is egregious, against New York public policy, and should not be condoned." *Id.* at 12. Whether Pruco can prove that Mr. Bruckner committed fraud and can find a compelling argument under New York law to defeat the incontestability clause in the Policy remains to be seen. It is certainly clear that Mr. Bruckner was not the "average consumer" needing protection from the powerful insurance industry; nevertheless, New York law applies.

### III. ABSTENTION BASED ON COMITY

In light of the foregoing and the Liechtenstein court's stay of its proceeding, it is not difficult to reject Pruco's argument that this Court should either abstain from adjudicating this action and dismiss the Complaint outright or stay the proceeding until the foreign proceeding reaches a final judgment. Def. Mem. Law at 5. International comity is "concerned with maintaining amicable working relationships between nations, a 'shorthand for good neighbourliness, common courtesy and mutual respect between those who labour in adjoining judicial vineyards.'" *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005) (quoting *British Airways Bd. v. Laker Airways, Ltd.*, [1984] E.C.C. 36, 41 (Eng. C.A.)). The Liechtenstein court displayed its good neighborliness when it stayed its proceeding based on a determination that this Court is better equipped to adjudicate the dispute because a judgment for either party would be enforceable in New York, whereas only a judgment in Pruco's favor would be enforceable in Liechtenstein. Pendleton Reply Decl. Exh. B at 5.

Pruco does not challenge this Court's jurisdiction, and the "mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see also Colorado River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."). Unless "exceptional circumstances exist that justify the surrender of" a district court's jurisdiction, parallel proceedings "should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as *res judicata* in the other." *Royal & Sun Alliance*, 466 F.3d at 92-93 (citations omitted). "In the context of parallel proceedings in a foreign court, a district court should be guided by the principles upon which international comity is based: the proper respect for litigation in and the courts of a sovereign nation, fairness to litigants, and judicial efficiency," but "circumstances that routinely exist in connection with parallel litigation cannot reasonably be considered exceptional circumstances, and therefore the mere existence of an adequate parallel action, by itself, does not justify the dismissal of a case on grounds of international comity extension." *Id*. at 94-95.

Pruco points to no circumstance exceptional enough to persuade the Court to waiver in its "unflagging obligation." The fact that Pruco initiated the Liechtenstein action a few days before this action was commenced is not exceptional; it is a routine circumstance with parallel litigation that one party files first. Nor would this Court's exercise of jurisdiction offend the sovereign courts of a foreign nation. On the contrary, the Liechtenstein court found that this Court should adjudicate the merits of the dispute.

Pruco's request in the alternative for a stay fares no better. The Liechtenstein court stayed its hand in favor of this Court. Far from being consistent with respect for a foreign court

11

to stay this proceeding, it would be disrespectful for this Court to ignore the judgment of that court and stay this proceeding. Accordingly, the Court hereby DENIES Pruco's motion to dismiss on abstention grounds or, in the alternative, to stay this proceeding in favor of the proceeding in Liechtenstein.

IV. FORUM NON CONVENIENS

Pruco's argument that the Court should dismiss on the basis of *forum non conveniens* is also unconvincing. "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Norex Petrol. Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). But "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.*, 330 U.S. at 508.

The Second Circuit outlined a three-step process to guide a district court's broad discretion in considering a motion to dismiss based on *forum non conveniens*: first, a court should determine the degree of deference properly accorded the plaintiff's choice of forum; second, it should consider whether the alternative forum proposed by the defendant is adequate to adjudicate the parties' dispute; at the third step, the court should balance the private and public interests implicated in the choice of forum. *Norex Petrol. Ltd.*, 416 F.3d at 153 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001)). The deference to a plaintiff's choice of forum falls on a sliding scale: "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri*, 274 F.3d at 72. In order to

prevail, "[t]he defendant bears the burden of establishing that a presently available and adequate alternative forum exists, and that the balance of private and public interest factors tilt heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

Pruco argues that Dixhuit's choice of a New York forum should be given little deference because Dixhuit is a foreign plaintiff suing in a United States court. Def. Mem. Law at 10-11. Although "less deference is afforded a foreign plaintiff's choice of a United States forum" because it is "much less reasonable to presume the choice was made for convenience," courts should "consider the totality of the circumstances supporting a plaintiff's choice of forum" based on the "broader principle under which the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on the degree of convenience reflected by the choice in a given case." *Norex Petrol. Ltd.*, 416 F.3d at 154 (citing *Iragorri*, 274 F.3d at 71-73).

Were it not for the lawsuit Pruco commenced in Liechtenstein, it is unclear whether Dixhuit could have obtained jurisdiction over Pruco in a Liechtenstein court. But Dixhuit initiated this suit *after* Pruco had submitted to the Liechtenstein Court's jurisdiction, suggesting forum shopping in an attempt to "win a tactical advantage resulting from local laws that favor [Dixhuit's] case" rather than "genuine convenience." *Id.* at 155. Nonetheless, New York is not an illogical choice of forum because Bruckner solicited the Policy in New York and the policy was negotiated and executed in New York. Thus, Dixhuit's choice of forum receives some – but not much – deference.[8]

Even if the Court found Dixhuit's choice of a New York forum warranted substantial deference, however, it would not end the inquiry but simply "recalibrate the balance for purposes

---

[8] The Second Circuit has also cautioned that courts should "arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum," and is not moving for dismissal as a means to forum shop for a forum more favorable to its own interests. *Iragorri*, 274 F.3d at 75.

of the remaining analysis." *Norex Petrol. Ltd.*, 416 F.3d at 157. At the second step of the analysis, "a movant must demonstrate the availability of an adequate alternative forum." *Id.* "[A] case cannot be dismissed on grounds of *forum non conveniens* unless there is presently available to the plaintiff an alternative forum that will permit it to litigate the subject matter of its dispute." *Id.* at 159. Implicit in a finding that an adequate alternative forum exists "is a finding that the foreign jurisdiction is as presently capable of hearing the merits of plaintiff's claim, and therefore as convenient to the parties, as the United States court where the case is pending. But such a finding is impossible where an action that can be maintained in the United States is foreclosed in the foreign jurisdiction." *Id.*

Pruco argues that Liechtenstein is an adequate alternative forum. Def. Mem. Law at 8, 10. But the reason the Liechtenstein court stayed that proceeding was that it could not afford Dixhuit complete relief. In its July 15, 2014, decision, the Liechtenstein court explained that in Pruco's action for declaratory relief, the court could nullify the Policy and declare Pruco is not required to perform, but if the Policy is not void, "[d]ue to the nature of the findings, a declaratory judgment issued in Liechtenstein [that the policy was not void] would not be enforceable and also not recognized in the USA." Pendleton Reply Decl. Exh. B at 3. On the other hand, it reasoned, this Court could either rule in Pruco's favor and declare the Policy void and Pruco's performance excused, or enforce the terms of the contract in Dixhuit's favor and award Dixhuit contractual damages. *Id.* Pruco offered no evidence in its reply memorandum to contradict the Liechtenstein court's interpretation of the applicable law.

"[T]he availability of an adequate alternative forum does not depend upon the existence of the identical cause of action in the other forum, nor on identical remedies." *Norex Petrol., Ltd.*, 416 F.3d at 158 (quotation omitted). That said, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, the unfavorable

change in law may be given substantial weight; the district court may conclude that dismissal would not be in the interests of justice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). The Second Circuit has found alternative forums adequate that "provide alternative legal actions to address the wrongdoing encompassed by" laws of the United States, even when the foreign forum's damages would be substantially less than those available in a domestic forum. *Norex Petrol., Ltd.*, 416 F.3d at 158 (finding foreign fraud actions may be adequate to adjudicate disputes arising out of RICO violations even though "few foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes," let alone treble damages).

Because the Liechtenstein court in which Pruco's action is pending, according to its recent decision, would not have the power to order the proceeds paid to Dixhuit, even if it were to hold that the Policy is valid and enforceable, its "remedy" may be "so clearly inadequate . . . that it is no remedy at all." If so, dismissal would not be in the interests of justice. But the fact that the particular Liechtenstein court in which Pruco brought its declaratory judgment action could not award damages for breach of contract does not preclude Liechtenstein from serving as a reasonable alternative forum if Dixhuit could bring its breach of contract and get full relief from another court in Liechtenstein.

Even assuming Dixhuit could maintain an action in a Liechtenstein court, Pruco cannot meet its burden under the third analytical prong of showing that the public and private interest factors "tilt heavily in favor" of Liechtenstein. *Abdullahi*, 562 F.3d at 189; *see also Iragorri*, 274 F.3d at 74-75 ("A defendant does not carry the day simply by showing the existence of an adequate alternative forum. The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."). The private interest factors – which compare the convenience and hardship of the litigants – include "the relative

ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Iragorri*, 274 F.3d at 73-74. The public interest factors include the administrative difficulties associated with court congestion; the imposition of jury duty upon those whose community bears no relationship to the litigation; the "local interest in having localized controversies decided at home"; and having trial "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems . . . in law foreign to itself." *Id.* at 74 (quoting *Gilbert*, 330 U.S. at 508-09).

The primary sources of evidence for Dixhuit's breach of contract claim and Pruco's affirmative defense of fraud are located in New York, where the Policy was executed and Mr. Bruckner had at least one medical examination conducted, and Belgium, where Mr. Bruckner underwent treatment for his brain tumor in 2006. Pruco is a New Jersey entity; its costs of obtaining evidence located in Belgium (or elsewhere in Europe) will be the same whether the dispute is litigated in Liechtenstein or in New York. Pruco has not submitted evidence showing Liechtenstein has a compulsory process that would be more favorable than New York, and Pruco has already produced documentary evidence related to Mr. Bruckner's treatment in Belgium (which tends to undercut any argument that it would not have access to Belgian evidence in a New York forum). Indeed, from Pruco's perspective, New York is a less costly and convenient forum; it is unavailing for Pruco to argue that the Court should dismiss Dixhuit's claim on *forum non conveniens* grounds – against Dixhuit's wishes – because Liechtenstein would be more convenient *for Dixhuit*. Nor do the public interest factors weigh heavily in favor of Liechtenstein. The Court has already determined that New York law should govern the case based on the grouping of contacts analysis, rendering this more of a localized controversy that

should be adjudicated in a forum that is familiar with the application of New York law.  Pruco's heavy burden is not met on the third prong of the *forum non conveniens* inquiry, and the Court therefore declines to disturb Dixhuit's choice of forum.

Pruco's motion to dismiss the Complaint based on *forum non conveniens* is DENIED.

The Clerk of Court is directed to terminate Docket Entry 12.

**SO ORDERED.**

Date:  **August 27, 2014**
       **New York, New York**

_____
**VALERIE CAPRONI**
**United States District Judge**